## Stafford v. Pinson, et al.

(Decided February 23, 1911.)

### Appeal from Floyd Circuit Court.

Contract—Waiver of Right to Demand Strict Compliance With.— Where a contract of lease provided that if one thousand dollars was not paid by the lessee on or before a specified date the lease should be null and void, the lessor by accepting on the day the money should have been paid a check for the amount of it and holding the check twenty days before returning it to the lessee, waived his right to claim a forfeiture of the contract on account of the failure to pay the money according to its terms.

MAY & MAY for appellant.

HARKINS & HARKINS for appellees.

OPINION OF THE COURT BY JUDGE CARROLL—Reversing.

On November 6, 1908, the appellee Hamilton entered into a contract with the appellant Stafford by the terms of which he leased to him six hundred acres of land for the purpose of mining coal therefrom. The contract stipulated that Stafford—

"Was to have until the 6th day of January, 1909, under this contract to enter upon said lands for the purpose of making coal entries thereon and for the purpose of exploring and developing said coal, and ascertaining the quantity and quality thereof; that if in the opinion of Stafford same should be found in such quantity and quality to be a profitable mining proposition, he is to pay on or before the 6th day of January, 1909, the sum of one thousand dollars, which amount is to be the first payment of rent or royalty as a consideration for the leasing under this contract of said coal at the rate of six cents per ton for the coal taken from said land."

On January 4th, 1909, the time in which Stafford might perform the conditions of the contract was extended for sixty days from that date, and on March 4th, Stafford gave to Hamilton in person a check on the Catlettsburg National Bank for one thousand dollars, reciting in the check that it was "for first annual royalty on lease. 11-6-1908."

Stafford testifies that when he gave this check to Hamilton he told him that he did not have sufficient money in the bank to pay it on that day, which was Thursday, but that if he would hold it until the following Mon-

day, March 8th, it would save him, Stafford, the trouble and expense of making a trip back to Catlettsburg until he returned there Saturday evening, and that Hamilton agreed to do this and accept the check—not making any objection to the words written in the face of it. On the following day, Hamilton telegraphed the bank, inquiring if the check was good, and the bank answered "not to-day;" but on March 8th, the bank sent Hamilton a telegram saying that the check would be paid on presentation. Hamilton did not present the check on March 8th, or at all, and on March 24th he wrote Stafford a letter, enclosing the check, saying:

"You remember that I refused to accept the check as payment, explaining to you at the time that I had since the date of our contract sold a half interest in my coal lands to W. B. Pinson and F. C. Scott, and that I could not make any new contracts without their approval; and since you were here last, I have seen them and they do not feel bound in any way to further entertain your proposition, claiming your tender of payment not legal and comes too late. Therefore, your check is returned."

In April, 1909, the appellees Pinson and Scott, to whom Hamilton has sold the mineral rights mentioned in the contract with Stafford, brought in connection with Hamilton this suit against Stafford to enjoin him from entering upon or trespassing upon the land described in his lease. After the pleadings had been made up, and the evidence taken, the court adjudged appellees entitled to the relief sought, dismissed the counterclaim of Stafford and directed a cancellation of the lease made by Hamilton to Stafford which had been put to record. From this judgment Stafford appeals.

Returning now to the facts of the case: It appears that on March 1st, 1909, Hamilton entered into a written agreement with Pinson and Scott, by which he leased to them the mineral rights that he had previously leased to Stafford—the contract reciting that it "was subject to the terms, considerations and conditions, together with such profits and liabilities as might arise from or grow out of a written contract executed on the 6th day of November, 1908, and renewed on the 4th day of January, 1909, between Hamilton and Stafford."

It will be noticed that by the extension of the contract, Stafford had until March 4th, in which to pay the

one thousand dollars stipulated for in the lease, and that three days before this extension expired Hamilton leased the land to Pinson and Scott. The terms of the lease to Pinson and Scott were more advantageous to Hamilton than the contract he had made with Stafford, and it is very plain from the evidence that he was induced by this fact to attempt to renounce the agreement with Stafford, and was encouraged to do so by Pinson and Scott. Hamilton testifies that he did not accept or agree to hold until March 8th, the check given to him by Stafford on March 4th, although he admits that Stafford asked him to do so and assigns as reasons for declining to accept the check that the words "For first annual royalty on lease. 11-6-1908," were objectionable as not in accordance with the terms of the written lease, and that the check was not a payment of the one thousand dollars. But the letter written by Hamilton to Stafford on March 24th, makes no mention of the fact that these words in the check were objectionable, and this omission in connection with other circumstances leaves the impression that these words in the check did not furnish the true reason for declining to accept it as a compliance with the contract. If we should assume that time was of the essence of the contract, and that a compliance with its terms required a tender in money or currency, and that in the absence of facts evidencing a waiver of strict performance by Hamilton the failure of Stafford to tender one thousand dollars in money on March 4th, according to the conditions of the agreement worked a forfeiture of his rights, we would nevertheless be obliged to hold that Hamilton's acceptance of the check on March 4th, with the understanding that it was not to be presented until March 8th, and his retention of it until March 24th, was a waiver of his right to claim a forfeiture on account of the failure of Stafford to pay the one thousand dollars on March 4th. If Hamilton did not agree to extend the time for the payment until March 8th, or was not disposed to accept the check in lieu of money, or was not willing to receive it as it was written, he should have declined to take the check when it was tendered on March 4th, or at least should have promptly returned it. His acceptance and retention of the check on March 4th, induced Stafford to believe that it was a satisfactory compliance with the contract, and that a payment of the money was not necessary. Asked "if Mr. Hamilton had not agreed as you

have stated to accept the check and hold it until Monday, would you have secured the money and paid him before Monday?'' Stafford answered: ''Yes, sir, my intention was to go right down on the train and get the money and bring it back; but checks was the way he did business, and I had no thought but what that would be the way to do it.'' Under these circumstances it would be manifestly unfair to hold that the contract was annulled by the failure of Stafford to tender in money on March 4th, one thousand dollars. A party will not be allowed to mislead one with whom he is dealing and then take advantage of the conditions his conduct has created to prejudice the other party. It is true that Hamilton testifies that he offered to return the check on March 9th, and that Stafford declined to receive it; but this is denied by Stafford, who is corroborated by the fact that the check was not returned to him until March 24th. Nor are we inclined to agree with Hamilton that he was induced to decline to accept the check as a performance of the contract because of the words written in it. While we do not intend to construe the contract or to express any opinion as to its true meaning, we feel authorized to say that the words written in the check would not have prejudiced Hamilton in any way or have estopped him from recovering more than one thousand dollars for the first year's royalty or rent if he was entitled to more than that under the contract. The contract provided that Stafford should pay ''the sum of one thousand dollars, which amount is to be the first payment of rent or royalty,'' and the check merely recited that it was ''for first annual royalty on lease.'' These words are to be read and considered in connection with the contract and could not have the effect of altering its terms. The fact is that Hamilton had placed himself in an embarrassing position by leasing the property to Pinson and Scott before the option he had given Stafford expired. That he was over-anxious to find some excuse to avoid the contract with Stafford is apparent in almost every line of the record. It is not at all material whether Stafford had in bank one thousand dollars on March 4th, if he was prepared to meet and pay the check on March 8th, and Hamilton agreed to wait until that day before presenting it for payment, which we are disposed to think he did. The answer of Stafford was made a counterclaim, and damages and other relief prayed for, but as the case

seems to have been prepared only upon the question we have disposed of, we will not consider or dispose of the matters set up by way of counterclaim, leaving them to be tried out upon a return of the case when either party may file such additional pleadings and take such evidence as may be necessary to fully present the issues made by the counterclaim.

Wherefore, the judgment cancelling the contract with Stafford and dismissing the counterclaim is reversed, with directions to enter an order dismissing the petition.